IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:05-CV-102-BO(1)

| | | |
|---|---|---|
| DENNIS GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| CITY OF RALEIGH, and | ) | |
| JANE PERVLOV, individually and in | ) | |
| her official capacity as Chief of Police | ) | |
| for the City of Raleigh, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Plaintiff's Motion for Summary Judgment, pursuant to

Rule 56 of the Federal Rules of Civil Procedure; Defendants' Motion to Dismiss, pursuant to

Rule 12(b)(1) of the Federal Rules of Civil Procedure; and Defendants' Motion for Summary

Judgment, pursuant Rule 56 of the Federal Rules of Civil Procedure. A hearing was held on

December 15, 2006, in Raleigh, North Carolina. For the reasons discussed below Defendants'

Motion to Dismiss is GRANTED; Defendants' Motion for Summary Judgment is GRANTED;

Plaintiff's Motion for Summary Judgment is DENIED; and this matter is DISMISSED.

## BACKGROUND

On Saturday, August 23, 2003, Plaintiff and others converged on a public way in Raleigh,

North Carolina, near the RBC Center. Plaintiff traveled from Cumberland, Virginia, in order to

1

express his views on abortion at a Promisekeeper's event held at the RBC Center. The City of Raleigh has no ownership interest in the RBC Center, including the parking lots surrounding the Center. Plaintiff and his group assembled and began distributing fliers and carrying signs on the RBC Center property. David Overman, a captain with the Raleigh Police Department ("RPD"), was working off-duty at the RBC Center supervising traffic and security. Staff at the RBC Center wanted Plaintiff and his group off of their property. Overman informed the group that they were trespassing, without tickets to the event, and that if they failed to leave they would be subject to trespass laws. After an argument, the group gathered and moved towards Edwards Mill Road, which runs next to the RBC Center. Another attempt to picket on the driveway of the RBC Center was disrupted, and the group was notified of the property boundary.

The group, including the Plaintiff, began picketing on Edwards Mill Road. The area had no sidewalk, so the group convened in a grassy area at the southeast corner of the intersection of Edwards Mill Road and the RBC Center. Overman contacted RPD's main station to ask whether a picketing receipt had been issued for that day. The police explained that Plaintiff was picketing in violation of the permit process, and that if they continued, they could be arrested. Plaintiff did not attempt to obtain a permit, and the group was dispersed.[1] Based on these events, Plaintiff filed the instant action under the Constitution, and 28 U.S.C. §§ 1983 and 1988.

<u>ANALYSIS</u>

Plaintiff filed suit on February 10, 2005, alleging that the City of Raleigh Code, Article C, Parades, Demonstrations and Street Events, Sections 12-1055, 12-1056, and 12-1057 violate the

---

[1] Plaintiff disputes that he was ever informed that he could apply and receive a permit on site. Overman submits that he spoke with some member of the group, but was unsure whether or not it was the Plaintiff himself.

2

First and Fourteenth Amendments. Plaintiff conceded his claim to compensatory damages, as noted at hearing, making summary judgment appropriate in this matter.

## I. Motion to Dismiss

A Rule 12(b)(1) motion to dismiss challenges subject matter jurisdiction. In response to such a challenge, the nonmoving party bears the burden of proving that subject matter jurisdiction is proper. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 769 (4th Cir. 1991). In determining whether such jurisdiction exists, a district court must regard the facts alleged in the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Defendant Perlov argues that she should be dismissed in both her individual and official capacity, as Chief of the RPD.

### A. Official Capacity

In a § 1983 action, there is no difference between suing the city and the person acting on behalf of the city. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Here, the City of Raleigh and RPD are indistinguishable for purposes of a § 1983 action. Thus, the claim against Defendant Perlov in her official capacity is redundant, and unnecessary and is DISMISSED.

### B. Individual Capacity

Plaintiff asserts that Defendant Perlov is liable in her individual capacity, however, qualified immunity shields municipal officials from liability so long as their conduct does not violate clearly established constitutional or statutory rights. *Wilson v. Layne,* 526 U.S. 603, 609 (1999). Courts must determine: (1) whether the public officer actually committed a constitutional violation; and (2) that the right infringed was clearly established at the time of the

3

violation. *Wilson*, 526 U.S. at 609. Here, the city ordinances in question are not so obviously unconstitutional as to render overcome qualified immunity. Further, Defendant Perlov had no direct or indirect contact with the Plaintiff surrounding this matter, as Plaintiff never applied for a permit. Defendant Perlov did not have actual knowledge that by acting as Chief of Police, she would be infringing constitutional rights under the statute. Accordingly, Defendant Perlov is entitled to qualified immunity and the action against Defendant Perlov in her official capacity is DISMISSED.

II.     Motions for Summary Judgment

Summary judgment cannot be granted unless there are no genuine issues of material fact for trial. FED. R. CIV. P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must demonstrate the lack of a genuine issue of fact for trial, and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Conclusory allegations are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment").

A.     Mootness

After the filing of this suit, Defendant City amended a number of the ordinances in question and argues that Plaintiff's claims are now moot. When a party challenges a particular

4

statute or ordinance, a substantial amendment to that law will moot the challenge. *Reyes v. City of Lynchburg,* 300 F.3d 449, 452-53 (4th Cir. 2002). However, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Where there is a practical likelihood of reenactment, a viable controversy remains. *Am. Legion Post 7 of Durham v. City of Durham,* 239 F.3d 601, 606 (4th Cir. 2001). Defendant bears the "heavy burden" of persuading the Court that the challenged conduct cannot be expected to restart. *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968). Further, the repeal of a challenged ordinance cannot render a case moot when it is replaced by an ordinance that repeats the allegedly wrongful conduct. *Northeastern Fla. Chapter of Assoc'd Gen. Contractors of Am. v. City of Jacksonville,* 508 US 656, 662-63 (1993). Thus, each provision of the Raleigh Ordinances will be evaluated to determine: (1) whether Defendants have demonstrated there is no practical likelihood of reenactment; and (2) whether the constitutional infirmity survives in the amended statute.

The current ordinances have been in effect since March 2006. Further, the City amended the provisions in response to litigation. The Court has no reason to suspect that the City will amend or repeal the March 2006 amendments. As a matter of law, the Court finds that Defendants have demonstrated that there is no likelihood that the Ordinance will be reenacted in its previous form. The Court turns to whether the purported constitutional defects exist in the Ordinances as amended.

1.    *Notice Requirement § 12-1056*

Both the old and the new ordinances contain provisions requiring that picketers obtain

5

notice prior to engaging in a demonstration. Plaintiff's claim regarding the notice requirement remains valid.

2. *Small Group Exception §§ 12-1056(b), 12-1057(f)*

Plaintiff was a member of a thirteen person group of demonstrators on August 23, 2003. In the new ordinance, groups of ten or less people are exempted from obtaining a permit. The old ordinance had no such exception. Although there is a small group exception, it would not have excepted the Plaintiff on August 23, 2003, because his group was larger than ten people. Thus, Plaintiff's challenge to the exception is not mooted by the amendment.

3. *Sign Dimensions § 12-1057(b)*

The old version of the statute prohibited picketers from carrying signs larger than 24 inches by 24 inches. The new statute expanded the permissible signs to no more than 36 inches by 36 inches. Plaintiff submits that his signs are larger than the new statute allows. On the day in question, Plaintiff carried signs nearly five feet tall. In addition, Plaintiff argues that the law is still constitutionally infirm because the larger size still fails constitutional muster. Because Plaintiff can show injury under the new statute, his claim is not mooted.

4. *Anonymity § 12-1056(b)(1), (4)*

The old version of the statute required that picketers disclose their affiliation, and disclose the name of the person who is in charge of the group. The revised version of the statute allows a degree of anonymity, but requires the name of the person who is to carry the receipt. Plaintiff argues that any disclosure of identity violates the First Amendment. Thus, under Plaintiff's theory, the alleged constitutional violation survives. Plaintiff's claim is not mooted by the amendment.

6

5. *Outermost Sidewalk § 12-1057(d)*

Both the old and the new regulations require picketers to be on the portion of the sidewalk closest to the street. Plaintiff's claim is not mooted by the amendment.

B. Standing

Defendant asserts that Plaintiff's lack standing because the statute is not so substantially overbroad as to warrant a facial challenge. Facial challenges are appropriate where a provision regulates "a substantial amount of constitutionally protected conduct." *Hoffman Estates v. Flipside, Hoffman Estates Inc.,* 455 U.S. 489, 494 (1982). However, Defendants improperly characterize this as a standing issue. Whether the Plaintiff has standing to assert a challenge does not require the Court to weigh the merits of the case, rather Plaintiff must have injury that is fairly traceable to Defendant's conduct. *Bennett v. Spear,* 520 U.S. 154, 167 (1997). The Court will refrain from discussing whether the law is overbroad at this time. Here, Plaintiff has standing as he was not permitted to speak under an allegedly unconstitutional regulation enforced by the Defendant, and thus has standing to challenge the statute as facially unconstitutional.

C. Permit Scheme

Plaintiff's main constitutional challenge is to the permit scheme enacted for picketers. Picketing is defined as "persons participating in vigils and any action primarily promoting or objecting to a policy upon those portions of the public ways not used primarily for vehicular parking and moving traffic and not constituting a parade." City of Raleigh Ordinances § 12-1055. Under the ordinances, a group of ten or more people must submit a "notice of intent to picket" which includes the location of the picket, dates of the picketing, whether or not there are minors present at the picket, and the name of the person who is to carry the receipt. *Id.* § 12-

7

1056(b).  Once notice is given, the designated officer must issue a receipt.  *Id.* § 12-1056(d).

"An ordinance that requires individuals or groups to obtain a permit before engaging in protected speech is a prior restraint on speech."  *Cox v. City of Charleston*, 416 F.3d 281, 284 (4th Cir. 2005); *see also Forsyth Cty, Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992). Neither the Fourth Circuit nor the Supreme Court has spoken on whether a non-discretionary permit process is a prior restraint.  In fact, many permit schemes are invalid prior restraints *because* of the unbridled discretion they give to the authorities.  *Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147, 150-51 (1969); *Saia v. New York*, 334 U.S. 558, 560-61 (1948); *Cox v. New Hampshire*, 312 U.S. 569 (1941).  "If the permit scheme 'involves appraisal of facts, the exercise of judgment, and the formation of an opinion'. . . by the licensing authority, 'the danger of censorship and of abridgment of our precious First Amendment freedoms is too great' to be permitted."  *Forsyth Cty, Ga.,* 505 U.S. at 130 (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940) and *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975)).  Here, the permit scheme involves no apprisal of facts, no exercise of judgment or the formation of an opinion, so the danger of censorship is nonexistent.  Nonetheless, in the area of parades and demonstrations, any permit scheme is deemed a prior restraint, and thus the Raleigh Ordinances are considered a prior restraint.

Although there is a "heavy presumption" against the validity of a prior restraint, the Supreme Court has recognized that government, in order to regulate competing uses of public forums, may impose a permit requirement on those wishing to hold a march, parade, or rally. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *Cox v. New Hampshire,* 312 U.S. at 574-576 (1941).  Such a scheme may not delegate overly broad licensing discretion to a

8

government official. *Freedman v. Maryland*, 380 U.S. 51, 55-56 (1965). Further, any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication. See *United States v. Grace*, 461 U.S. 171, 177 (1983). To be narrowly tailored, an ordinance "need not be the least restrictive or least intrusive means of" effectuating the relevant interests, but it may not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989).

The Court cannot conclude that any portion of the ordinance is content-based. The regulations apply to all pickets, regardless of the message conveyed. Further, there are no exceptions other than the small group exception. Plaintiff has not demonstrated that the statute is applied selectively or only to certain groups. In addition, because the regulation applies to groups of ten or more people, there are ample alternative avenues of communication. The Ordinance is properly understood as a time, place and manner restriction.

The City's stated interest in having a notice requirement is public safety. The City claims that it is within its purview to protect police officers, motorists, pedestrians, those accessing businesses near the site of the demonstration and the picketers themselves. Crowd control and public safety are recognized interests that permit a government to adopt, time, place and manner restrictions on demonstrations. *Cox v. State of New Hampshire*, 312 U.S. 569, 576 (1941) (noting that regulations of the use of a public forum that ensure the safety and convenience of the people are not "inconsistent with civil liberties but ... [are] one of the means of safeguarding the good order upon which [civil liberties] ultimately depend."); *Poulos v. New Hampshire*, 345 U.S.

9

395, 403 (1953) ("[T]he [permit] required is not the kind of prepublication license deemed a denial of liberty since the time of John Milton but a ministerial, police routine for adjusting the rights of citizens so that the opportunity for effective freedom of speech may be preserved."). In the context of ten or more people demonstrating on a public way, the Court finds that the City of Raleigh has a substantial state interest in regulating public safety of the picketers, those potentially opposing such a demonstration and any other members of the public tangentially related to the area of the picket.

A statute is narrowly tailored if the government "could reasonably have determined that its interests overall would be served less effectively than without the [regulation] than with it." *Ward*, 491 U.S. at 801. Here, the ordinance requires that the officials administrating the process *must* grant the receipt of notice, lacking any authority to deny the permit. Thus, the issuance of a permit is not left "to the whim of the administrator" *Forsyth Cty.*, 505 U.S. at 133. Further, the notice requirement allows the City to allocate space when multiple requests are made, notify demonstrators of potential safety hazzards and coordinate with other law enforcement agencies to provide public safety. Because it is necessary to assure prompt and appropriate commitment of public resources, a non-discretionary notice requirement is narrowly tailored to achieving public safety though the permit scheme.

Plaintiff also claims that the notice statute is unconstitutional as it was applied to him in August 2003. An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others. *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 446 U.S. 789, 803 (1984). Here, Plaintiff has not offered any evidence to distinguish themselves from all other

picketers in groups of ten or more that must comply with the permit process. Plaintiff was part of a thirteen member group that refused to comply with the permit process. No evidence shows that Plaintiff attempted to individually engage in leafleting, street preaching or prayer, which would not require notice under the statute. The ordinance is constitutional on its face and as-applied to the Plaintiff in this case.

D.     Small Group Exception

The Raleigh Ordinances exempt groups of nine or less people from complying with the permit process. A permit process must have a small group exception, because a small group of people does not pose the same safety threat as a larger group. *City of Charleston,* 416 F.3d at 287. The Fourth Circuit specifically declined to "announce a numerical floor below which a permit requirement cannot apply" noting that the "relevant legislative body is the proper forum for balancing the multitude of factors to be considered. . . " *Id.* at 286. Plaintiff argues that the number ten is unreasonable, both facially and as applied to his group of thirteen people.

The Supreme Court previously upheld a permit requirement to groups of fifteen to twenty individuals. *State of New Hampshire*, 312 U.S. at 659. Defendant cites the narrow sidewalks and minimal rights-of-way available in some areas that makes a group of ten or more a reasonable number to require police notification. Chief Perlov testified that the number ten is reasonable based on the minimal notice requirement, Raleigh's status as the State Capitol, and home to numerous sports teams. The Court finds the number ten is a narrowly tailored time, place and manner restriction because the City's interest in public safety "would be achieved less effectively absent the regulation." *Ward,* 491 U.S. at 799. Plaintiff does not have standing to challenge the small group exception as-applied to the Plaintiff, because the exception did not

11

exist when he picketed in 2003. Further, Plaintiff brought this suit as an individual, and is thus abrogated from arguing that he is injured as an individual under the small group exception.

E.      Sign Dimensions

Plaintiff challenges the restrictions of the size of signs that may be carried at a picket. The Raleigh Ordinances require that picket signs may not exceed 36 inches by 36 inches. The Supreme Court struck down a total ban on public sidewalk picketing, but noted that sidewalks were still subject to reasonable time, place, and manner restrictions. *Grace*, 461 U.S. at 181. The Ninth Circuit has upheld sign restrictions that "do not reduc[e] the total quantum of speech on a public issue." *Foti v. City of Menlo Park*, 146 F.3d 629, 641-42 (9th Cir. 1998). Contrary to Plaintiffs assertions, there is ample evidence that the sign restriction is reasonable and achieves the legislature's objective of traffic safety. Defendants expert in traffic engineering expert stated that the previous 24 inches by 24 inches sign restriction promoted traffic safety while permitting conveyance of a message. Chief Perlov testified that in her experience, protestors were known to use signs as shields to push officers of the RPD. Plaintiff himself testified that he saw vehicles pull off the roadway and slow down in response to his protest. Pedestrian traffic may also be impeded by larger signs. Further, there are other ample methods of communication available through smaller signs, leaflets or sidewalk speeches. The Court finds that the City's sign size restriction is narrowly tailored to their interest in traffic safety, and is a valid time, place and manner restriction.

Plaintiff argues that this restriction is unconstitutional as-applied to him because his four to five foot wide signs do not block traffic control devices or sidewalks. At deposition, Plaintiff testified that he generally keeps his sign on the ground. The Court finds that the statute is not

12

unconstitutional as-applied to the Plaintiff because no matter where a sign is placed, they can obstruct the view of motorist and pedestrians when they are of the size that Plaintiff carried.

F.    Anonymity

The Raleigh Ordinances, as amended, require that the protestors provide the name of the person who is to retain the permit during picketing. The City states that its interest in the requirement is to assure that the City is reimbursed for potential damage caused by users of public property. The Supreme Court has recognized that financial accountability is a legitimate government interest. *Thomas v. Chicago Park District*, 534 U.S. 316, 322 (2002).[2] By requiring a name, the City is able to identify the person in charge, and can effectively communicate with the group. The City does not require that the group disclose any organization they are affiliated with or the nature of the protest. By requiring only the name of one person, the City is minimally invasive while protecting its interest in financial accountability. The statute is narrowly tailored to a substantial government interest and facially valid. The Plaintiff did not comply with the permit process and was not required to disclose a name, so the Plaintiff has no standing to challenge the anonymity requirement as-applied.

G.    Outermost Sidewalk

The Raleigh Ordinances require that picketing occur on the outermost area of the sidewalk, the portion of the sidewalk closest to the street. The Supreme Court upheld a statute

---

[2] The Supreme Court in *Watchtower* struck down a statute requiring speakers to divulge their identities before speaking. *Watchtower Bible and Tract Society of N.Y., Inc. v. Village of Stratton* 536 U.S. 150, 166-67 (2002). However, the statute in that case involved a canvasser's right to approach private homeowners without first seeking a discretionary permit from the mayor. The Raleigh Ordinances are clearly distinguishable, and the City's interest in protecting public property is more compelling than that in *Watchtower*.

13

that prohibited picketing "in such a manner as to obstruct or unreasonably interfere with free ingress or egress" to public premises or with free use of public sidewalks. *Cameron v. Johnson*, 390 U.S. 611, at 612 n.1, 617 (1968). The City has determined the appropriate portion of the sidewalk for picketers. The requirement is objective and easily understandable. The City has a substantial interest in keeping sidewalks and rights-of-way open for all users, including pedestrians who are not involved in the protests. The statute is narrowly tailored, as it applies to only groups of ten or more people who would have an impact on the flow of pedestrian traffic. Plaintiff has no standing to raise an as-applied challenge because he does not cite evidence that he attempted to protest on the portion of the street that is restricted to picketers.

H.      Right to Assemble

Plaintiff argues that the regulations impact his right to freely assemble. Like speech, the Government may regulate the time place and manner in which parties can assemble. *Cox v. Louisiana*, 379 U.S. 536, 544 (1965). The same reasoning that justifies the constitutionality of the statute as it impacts on the right to speak holds true as to its impact on Plaintiff's right to assemble. Plaintiff's challenge fails.

According, Defendants' Motion to Dismiss is GRANTED; Defendants' Motion for Summary Judgment is GRANTED; Plaintiff's Motion for Summary Judgment is DENIED; and this matter is DISMISSED.

SO ORDERED, this _29_ day of March, 2007.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

14